# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-1897

RUDITE PEDE,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals
No. A75-822-118

ARGUED JANUARY 4, 2006—DECIDED MARCH 24, 2006

Before POSNER, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Soon after arriving in the United States from Latvia in 1997, Rudite Pede married Alexander Mishulovich, a United States citizen, and applied for adjustment of status. But several things stood in the way of her becoming a permanent resident. She obtained her visa for entry into this country by fraud and she presented a phony passport in the name of Dace Mediniece upon arrival. Also, not to skip an unusual detail, her husband (Mishulovich) was a sex-slave trafficker (Latvian women imported to work as "dancers" in Chicago nightclubs) with whom Pede was in cahoots.

In 1999, Pede was convicted in federal district court of conspiracy to commit visa fraud (18 U.S.C. §§ 371,

1546, and 2) and four counts of visa fraud for causing women in Latvia to use false visas for entry into the United States (18 U.S.C. §§ 2, 1546). Mishulovich was convicted of these and additional crimes as part of the same scheme, including bringing several Latvian women into the United States and holding them in involuntary servitude.

Upon her conviction, Pede spent 9 months in prison and was placed in removal proceedings. Given her conviction and the fact that she wasn't seeking any form of relief from deportation, the proceeding would have been over quickly except for one thing—Pede and Mishulovich moved to reopen her earlier adjustment of status hearing (one she missed in 1998) and the government had not gotten around to deciding the motion. The general practice under such circumstances is to stay the removal proceedings, *see Matter of Garcia*, 16 I. & N. Dec. 653, 656-57 (BIA 1978); *Hassan v. INS*, 110 F.3d 490, 492 (7th Cir. 1997), and that's what happened here—at least half a dozen times between November 1999 and January 2004. Finally, the immigration judge ("IJ") decided that there was no sense in waiting any longer. Even if the motion to reopen was granted, the IJ reasoned, there was no way Pede could convince the government to overlook her fraud conviction and grant her request for adjustment of status. Refusing to allow another continuance, the IJ ordered Pede removed.

Pede now argues that, by refusing to continue her case, the IJ denied her the right to have her request for adjustment properly adjudicated. She points out that we deemed such a refusal unacceptable in *Subhan v. Ashcroft*, 383 F.3d 591, 594-95 (7th Cir. 2004). *See also Benslimane v. Gonzales*, 430 F.3d 828, 832 (7th Cir. 2005) ("An immigration judge cannot be permitted, by arbitrarily denying a motion for a continuance without which the alien cannot establish a ground on which Congress has determined that he is eligible to seek to remain in this country, to thwart the congressional design.") (citations omitted). But in *Subhan* the IJ gave no reason for denying the continuance; here, the

reason was clearly spelled out—the ultimate hopelessness of Pede's adjustment application. That's a perfectly acceptable basis for the IJ's exercise of discretion. *See Garcia*, 16 I. & N. Dec. at 656-57 ("It clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance . . . upon his determination that the visa petition is frivolous or that the adjustment application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the petition.").

Pede also argues that the IJ improperly failed to notify her of her eligibility to apply for voluntary departure, withholding of removal, or protection under the Convention Against Torture. *See* 8 C.F.R. § 1240.11(a)(2) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing."); *Asani v. INS*, 154 F.3d 719, 727 (7th Cir. 1998). She does not argue, however, that she is in fact eligible for any of those forms of relief. The IJ made a preliminary finding that she was not, and Pede's attorney made no objection. There is no harm in failing to notify an alien of relief for which she is ineligible.

The petition for review is DENIED.

A true Copy:

  Teste:

      ————————————————
      *Clerk of the United States Court of*
      *Appeals for the Seventh Circuit*

USCA-02-C-0072—3-24-06