Ana Milena SERNA–GARCIA,
Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 04–2254.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Sept. 9, 2009.

Filed: Sept. 24, 2009.

Thomas E. Moseley, Newark, NJ, for Petitioner.

Douglas E. Ginsburg, John D. Williams, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: Chief Judge SCIRICA, CHAGARES and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Ana Milena Serna–Garcia petitions for review of the Board of Immigration Appeals' ("BIA") final order of removal. We will grant her petition in part, deny it in part, and remand for further proceedings.

### I.

Serna–Garcia is a native and citizen of Colombia. She arrived in the United States in 2001 without a valid entry document, and the Government instituted removal proceedings. Serna–Garcia concedes removability, but seeks asylum, statutory withholding of removal, and withholding of removal under the Convention Against Torture ("CAT"). Serna–Garcia claims that she fears being kidnaped and tortured by the leftist guerilla revolutionary group known as the Fuerzas Armadas Revolucionarias de Colombia ("FARC") on account of her imputed political opinion and membership in a particular social group.[1]

Serna–Garcia's mother moved to the United States in 2000, leaving Serna–Garcia (then twenty years of age) to care for her four-year-old sister. Serna–Garcia also lived with her older brother. Their family is affluent, and they own three homes in Colombia and have wealthy relatives in the United States. Serna–Garcia claims that she fled to the United States after receiving approximately six threatening phone calls over a period of approximately six weeks. The callers did not identify themselves, but she believes them to be members of FARC. The callers demanded that she pay 15 million pesos and threatened that, if she refused, they would kidnap and otherwise harm her or her sister. Serna–Garcia believes that she was targeted for these threats because she is a single young woman of financial means.

Serna–Garcia testified to the foregoing at her hearing before the Immigration Judge ("IJ"). (A.153, 160–63.) She also acknowledged that, though she does not support FARC, she has never taken any action against it. (A.151.) The IJ acknowledged FARC's pervasive use of kidnaping and extortion and found credible Serna–Garcia's testimony that FARC had threatened her. The IJ denied asylum and statutory withholding, however, because he concluded that those threats were motivated merely by FARC's desire to fund its operations and not by any political opinion held by Serna–Garcia. The IJ also stated that wealth could not form the basis for a political asylum claim, though he never specifically addressed Serna–Garcia's claim that she is a member of a particular social group. The IJ denied Serna–Garcia's CAT claim on the sole basis that she had not shown any threat from the Colombian government (as opposed to FARC).

Serna–Garcia also testified about other circumstances, which the IJ found not to be credible. She testified that her brother is associated with FARC, that he is violent and has abused her, and that he once threatened to take their younger sister

1. We recently summarized FARC's role in the ongoing Colombian civil war in *Gomez–Zuluaga v. Attorney General*, 527 F.3d 330, 335 (3d Cir.2008), and those background observations apply equally to the record in this case.

from her. (A.157–59.) Serna–Garcia did not present these allegations as an independent claim for relief, although the IJ appears to have believed she did. The IJ rejected her testimony about her brother because Serna–Garcia had not mentioned her brother during her airport or credible fear interviews and had provided no corroboration (for example, by calling her mother as a witness). Serna–Garcia also testified that, while she was in college, FARC members sometimes disrupted classrooms with guns and bombs and caused the school to close for a period of months. The IJ did not specifically reject this testimony, but dismissed it as an attempt to "interject ideology into this case," which he rejected. Serna–Garcia appealed, and the BIA summarily affirmed. She now petitions for review.[2]

## II.

We have jurisdiction under 8 U.S.C. § 1252. "Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision as the final agency determination." *Pierre v. Att'y Gen.*, 528 F.3d 180, 184 (3d Cir.2008). In doing so, we review legal issues *de novo*, subject to established principles of deference, and review any factual determinations for substantial evidence, which means that we may not disturb them unless " 'any reasonable adjudicator would be compelled to conclude to the contrary.' " *Gomez–Zuluaga v. Att'y Gen.*, 527 F.3d 330, 339–40 (3d Cir.2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under principles of agency review, we may not reach issues that the IJ did not address. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154

L.Ed.2d 272 (2002). Thus, if the IJ failed to address a claim or applied the wrong legal standard, we must remand for the BIA to address the claim or apply the proper standard in the first instance. *See Valdiviezo–Galdamez v. Att'y Gen.*, 502 F.3d 285, 291 (3d Cir.2007) (citing *Ventura*, 537 U.S. at 16, 123 S.Ct. 353).[3] Serna–Garcia raises essentially four arguments, which we will address in turn.

### A. Asylum and Statutory Withholding of Removal

Each of Serna–Garcia's first two arguments is addressed both to her claim for asylum and for statutory withholding of removal. Those forms of relief are available only to aliens who have been persecuted or face persecution on account of a statutorily-protected ground—i.e., "race, religion, nationality, membership in a particular social group, or political opinion[.]" *See Gomez–Zuluaga*, 527 F.3d at 340, 348. The IJ did not reach the issues of whether Serna–Garcia's potential mistreatment rises to the level of persecution or whether she has a well-founded fear of persecution or showed it more likely than not to occur. *See id.* at 345, 348–49. Instead, he denied these claims on the sole basis that such mistreatment would not be "on account of" any statutorily-protected ground.

■ Serna–Garcia argues that the IJ erred in two respects. First, she argues that the IJ erred because FARC in fact targeted her because of her imputed political opinion. The record, however, does not compel that conclusion.[4] Asylum and withholding provide protection from "persecution on account of the *victim's* political

---

**2.** We stayed this petition at Serna–Garcia's request for approximately four years while she pursued an application for an adjustment of status based on her marriage to a United States citizen. That application has now been denied, and we have lifted the stay. The parties have filed supplemental briefs, and this petition is ripe for disposition.

**3.** For this reason, we reject the Government's repeated invitations to affirm on the basis of issues that the IJ did not reach.

**4.** Serna–Garcia did not raise any issue regarding political opinion before the BIA, so there is some question of whether she has exhausted this claim. *See* 8 U.S.C.

opinion, not the persecutor's." *INS v. Elias–Zacarias*, 502 U.S. 478, 482, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The opinion may be the victim's actual opinion or one imputed to her by the persecutor. *See Gomez–Zuluaga*, 527 F.3d at 344. In either event, however, an applicant must provide evidence that *her* actual or imputed opinion is what motivates the persecutor. *See id.* at 343.

In this case, the IJ properly concluded that there is no evidence of record that FARC has targeted Serna–Garcia on account of her actual political opinions or any that FARC imputes to her. On the contrary, she acknowledges that she never took any action against FARC, and did not testify that the threatening telephone calls included any accusations about her affiliations or beliefs. Nor did she present any other evidence of political affiliation or activity.

Serna–Garcia nevertheless argues that FARC imputes a political opinion to her because it uses kidnaping to target "class enemies" for political reasons. The record does show that there is a political element to FARC's use of kidnaping. (A.263, A.319, A.325.) FARC's own political motivation, however, does not mean that it imputes any political opinion to its targets generally or to Serna–Garcia in particular.

*See Elias–Zacarias*, 502 U.S. at 482, 112 S.Ct. 812. *See also Orejuela v. Gonzales*, 423 F.3d 666, 674 (7th Cir.2005) (rejecting similar claim for this reason even though petitioner belonged to wealthy class unlikely to share FARC's political opinions). Accordingly, the record does not compel the conclusion that FARC targeted Serna–Garcia for her imputed political opinion.[5]

■ Second, Serna–Garcia argues that the IJ erred in failing to address whether she qualifies for asylum or withholding as a member of a particular social group. We agree. Serna–Garcia squarely presented a claim based on her membership in a potential social group to both the IJ and the BIA. She claims to belong to a social group composed of young, single women with financial means who are vulnerable to kidnaping and have been threatened by FARC. *Cf. Gomez–Zuluaga*, 527 F.3d at 345 (recognizing social group defined as "women who have escaped involuntary servitude after being abducted and confined by the FARC"); *Orejuela*, 423 F.3d at 672 (recognizing social group defined as "the educated, landowning class of cattle farmers targeted by FARC"). Neither the IJ nor the BIA, however, addressed whether that category qualifies as a particular social group or otherwise addressed this claim.[6] Thus, as Serna–Gar-

§ 1252(d)(1). *But see Singh v. Gonzales*, 413 F.3d 156, 160 n. 3 (1st Cir.2005) (finding jurisdiction over claims not raised before the BIA where the BIA summarily affirmed the IJ's decision) (cited in *Lin v. Att'y Gen.*, 543 F.3d 114, 123 (3d Cir.2008)). We need not address that issue, however, because Serna–Garcia's argument clearly lacks merit. *See Jordon v. Att'y Gen.*, 424 F.3d 320, 325 n. 8 (3d Cir.2005).

5. As the Government argues, Serna–Garcia relies on reports that are not part of the agency record. We thus do not consider them. *See* 8 U.S.C. § 1252(b)(4)(A). We note, however, that even the 2001 United States Customs and Immigration Services Report on which she principally relies describes

only FARC's own political motivations, and does not compel the conclusion that it generally imputes a political opinion to its targets. Serna–Garcia also notes that an asylum officer determined at her credible fear interview that her claim is based on political opinion. She does not argue that the IJ was bound by or owed deference to that conclusion, however, and we do not believe he did.

6. The IJ did not implicitly decide this claim by ruling that wealth is not a basis for political asylum. The IJ stated merely that "I'm not going to expand the INA Act to cover anybody that's got a dollar in their pocket." (IJ Dec. at 11) (A.113). Serna–Garcia's claim is based on more than wealth alone, and the

cia argues, we must remand for the BIA to do so in the first instance. *See Valdivie-zo–Galdamez*, 502 F.3d at 291.

## B. The CAT Claim

■ Serna–Garcia next argues that the IJ applied the wrong legal standard in rejecting her CAT claim. We find that argument persuasive as well. This claim required Serna–Garcia to show both that "it is more likely than not that she will be tortured if removed to Colombia, and that such torture will occur with the consent or acquiescence of the [Colombian] government." *Gomez–Zuluaga*, 527 F.3d at 349. The IJ did not reach the first of these issues. Instead, it rejected this claim on the sole basis that "the torture, if any, has to be by the government or the government's agents and it is clearly [sic] the government's agents are not the [FARC]. The fact that the government can't control the [FARC] does not mean that the government is going to torture this women [sic]." (IJ Dec. at 14) (A.116).

That was not the proper standard at the time of the IJ's decision, and is not the proper standard now. CAT provides relief from torture likely to be inflicted, not only by the government itself, but by others with the government's consent or acquies-

cence. *See Gomez–Zuluaga*, 527 F.3d at 349–50 (citing 8 C.F.R. § 208.18(a)(1)). And, as we recently explained, acquiescence does not require that the government have even actual knowledge of the torture; instead, wilful blindness will suffice. *See id.* at 350. Accordingly, we will remand for the BIA to apply the proper standard to this claim. *See id.* at 350–51 (remanding for application of proper standard where IJ concluded merely that the petitioner had not shown that torture by FARC would occur "at the hands" of the Colombian government).[7]

## C. Asserted Procedural Errors

Finally, Serna–Garcia argues that this case as a whole should be remanded for three procedural reasons. Although her arguments raise concerns, they do not warrant independent relief. First, Serna–Garcia argues that the IJ denied her due process by taking over her examination at the hearing. It is true that the IJ repeatedly took over Serna–Garcia's examination, both on direct and cross. Serna–Garcia, however, does not claim that the IJ curtailed her ability to present evidence, *cf. Kaita v. Att'y Gen.*, 522 F.3d 288, 301 (3d Cir.2008), and his conduct did not rise to the level of intemperance or apparent partiality that we have condemned in other cases, *cf. Fiadjoe v. Att'y Gen.*, 411 F.3d 135, 154–57 (3d Cir.2005).[8]

IJ did not mention a potential social group claim, let alone cite or apply the relevant standard. *See Escobar v. Gonzales*, 417 F.3d 363, 366–68 (3d Cir.2005) (explaining the standard and surveying social group claims).

7. Serna–Garcia also argues that torture at the hands of FARC qualifies for protection under CAT because FARC operates as an "alternative government." She cites no authority in support of that contention, but we leave it to the BIA to address it in the first instance if and when appropriate on remand.

8. A possible exception concerns Serna–Garcia's testimony regarding mistreatment by her brother, but that testimony is irrelevant to any issue on review. The IJ took over cross-examination from the Government's counsel

to establish that Serna–Garcia had not mentioned her brother at her airport or credible fear interviews. (A.174–79.) He then concluded for that reason that her testimony regarding her brother was "a recent fabrication," and faulted her for not calling her mother as a witness to corroborate that testimony. (IJ. Dec. at 11–13) (A.113–15). Serna–Garcia, however, never asserted her treatment by her brother as a basis for relief and, though she takes issue with the IJ's assessment of her testimony on this issue, concedes that it is "irrelevant and immaterial to her claim based upon the kidnaping threat from FARC[.]" Moreover, the IJ's denial of her kidnaping claim was not based on his credibility finding regarding Serna–Garcia's brother. Instead, he expressly found the kidnaping

Second, Serna–Garcia argues that the IJ's decision reflects "confusion" regarding the proper asylum standard because it suggests (wrongly) that the absence of past persecution precludes a finding of future persecution. Although the IJ's decision might be read to raise that suggestion, (IJ. Dec. at 14) (A.116), any error in that regard is harmless. Serna–Garcia did not claim before the Agency and does not claim before this Court that she suffered past persecution in Colombia, and that issue clearly played no role in the IJ's rulings.

Finally, Serna–Garcia argues that the BIA abused its discretion in summarily affirming without addressing her "serious legal issues." Although we have jurisdiction to review the BIA's decision to affirm without opinion, and agree that a more thorough discussion would have been preferable, the BIA's decision to summarily affirm means that the IJ's decision is that of the Agency for purposes of our review. *See Smriko v. Ashcroft,* 387 F.3d 279, 296 & n. 11 (3d Cir.2004). Thus, because we can review the IJ's decision directly, the BIA's decision not to write its own opinion does not independently warrant relief under these circumstances. *See id.*

### III.

Accordingly, we will grant the petition for review to the extent that it challenges the denial of Serna–Garcia's claims for asylum and statutory withholding based on her claimed membership in a social group and her claim for relief under CAT. We will deny the remainder of the petition.

claim credible, (IJ Dec. at 13) (A.115), but denied it solely for the reasons discussed above. Accordingly, we have no occasion to reach the IJ's treatment of Serna–Garcia's testimony about her brother. If her claims about her brother prove relevant on remand, the BIA should address those issues in the first instance.